IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JULIA BENNETT, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 7:15CV543 |
| FASTENAL COMPANY,<br>Serve:<br>CT Corporation System, Registered Agent<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060-0000<br>(Henrico County) | ) ) ) ) ) ) ) ) |
| and | ) ) |
| PHILIP J. BUTTERY,<br>Serve:<br>194 Meadowview Road<br>Bland, Virginia 24315-4840<br>(Bland County) | ) ) ) ) ) ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff Julia Bennett moves for judgment against defendants Fastenal Company ("Fastenal") and Philip J. Buttery ("Buttery"), and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION AND VENUE

(1)   This is suit for sex discrimination and harassment and assault and battery authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* and the common law of Virginia.

(2)   This Court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(4).

(3)   Plaintiff timely filed a charge with the Equal Employment Opportunity Commission and the Virginia Council on Human Rights; received a notice of right to sue dated July 27, 2015 and files this action within 90 days of receipt of the notice of right to sue.

(4)     The plaintiff is a female and resident of the City of Radford, County of Montgomery, Virginia.

(5)     On information and belief, Fastenal is a corporation doing business in the western district of the Commonwealth of Virginia and elsewhere.

(6)     At all times material hereto, Fastenal employed 300 or more persons.

(7)     At all times material hereto, Buttery was employed as a general manager of Fastenal and served as plaintiff's supervisor and acted as an employee of Fastenal within the actual or apparent scope of his authority, or in his capacity as an individual, or both.

(8)     At all times material hereto, Fastenal is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a).  At all times material hereto Fastenal was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto Fastenal was a person engaged in an industry affecting commerce which had fifteen or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding calendar year.

(9)     Venue properly lies in the Roanoke division of the western district of Virginia in that all of the discriminatory acts alleged herein occurred in the western district of Virginia.

## STATEMENT OF FACTS

(10)    During her senior year at Radford University, plaintiff was pursuing a business degree with an emphasis in marketing and obtained an internship with Fastenal (plaintiff is not certain of the precise legal name of her employer) in Dublin, Virginia.

(11)    Plaintiff was hired as a sales trainee and worked for Fastenal from August 18, 2014 to December 12, 2014 (all dates are approximate).

(12)    According to the company's website (*www.fastenal.com*), Fastenal is North America's largest distributor of fastener products and operates nearly 2,700 stores in 50 states and does business in more than 20 countries.

2

(13) During the course of plaintiff's internship, Buttery made inappropriate sexual comments and touched plaintiff inappropriately and retaliated against her and terminated her employment in December 2014. Plaintiff believes that Buttery also did similar things to other women.

(14) Very briefly, after plaintiff's employment began, April Webb, another woman who worked for Fastenal, told plaintiff that after plaintiff interviewed with Buttery, he slapped the desk hard and said, "hot damn." When Courtney Shupe (another woman who worked for Fastenal) asked what was going on, Buttery said that he had never seen "titties" like plaintiff's; that Buttery was a preacher; and that plaintiff was the closest he had ever been to a strip bar. April also stated that before plaintiff's start date, Buttery had discussed "boob size" with Courtney, and that Buttery had made many comments about plaintiff's breasts during the course of plaintiff's employment.

(15) After plaintiff began working, Buttery had plaintiff ride in a truck with him to Newport Repair. While plaintiff and Buttery traveled together, Buttery made comments that made plaintiff uncomfortable. For example, Buttery told plaintiff that he had to know her and know that he could trust her. Instead of looking at plaintiff's face while talking, however, Buttery kept staring at plaintiff's breasts and thighs while trying to drive. Buttery also asked about plaintiff's boyfriend, and asked if the boyfriend was plaintiff's boyfriend or boy toy. Buttery also asked if plaintiff was "really naughty" as a teenager, asked about plaintiff's love life, and talked or asked about plaintiff's religious and political beliefs.

(16) Not only did Buttery make unwelcome sexual advances and comments, at times he would become volatile and physically threatening. For example, on or about November 3, 2014 (again all dates are approximate), April and plaintiff were receiving freight and talking when Buttery said something like, "so now you are talking back to your boss. If I was my dad I would knock your teeth out and have you picking them up off the floor." When plaintiff said "oh my God" or some such, Buttery responded with something like, "I would knock your teeth out

3

and have you picking them up off the floor for saying the Lord's name in vain." April told plaintiff to ignore Buttery as he had said this kind of thing before.

(17) In addition, sometimes when Buttery made comments about plaintiff's appearance and she did not respond, Buttery would call plaintiff names like "scatterbrained," "dumb," or "hardheaded." This happened almost on a daily basis. Buttery also said something like, "we are all God's children, and sometimes we all have to be spanked every once in a while." April told plaintiff that she and Buttery had argued several times because Buttery would tell people that the women were his work wives.

(18) In addition, Buttery grabbed his crotch at work and stared at plaintiff and some of the other women who worked there. This happened several times a day and made plaintiff feel terribly uncomfortable. Some of the other women, such as April, made jokes and referred to Buttery as "jock itch." Buttery would also sometimes jiggle his private parts and stare at plaintiff.

(19) Buttery also asked plaintiff one day whether she ever had certain body parts waxed. When plaintiff stated that she did not know what Buttery meant and that she had had her eyebrows waxed, Buttery said never mind and shook his head and rolled his eyes.

(20) As stated, Buttery also talked about plaintiff's relationship with her boyfriend and asked plaintiff whether he helped with the kids (plaintiff has three children). Buttery also told plaintiff that he thought that plaintiff's boyfriend was a creep and commented about how pretty plaintiff was and told plaintiff that she could do much better than her boyfriend.

(21) Buttery also touched plaintiff inappropriately. For example, one day (plaintiff believes that the date was December 3, 2014) when plaintiff was heating some food at work, Buttery approached plaintiff from behind and rubbed her back and shoulders. Buttery also pressed his crotch against plaintiff's buttocks and breathed down plaintiff's neck. Plaintiff was frightened and pulled away as quickly as she could and walked out the office. The rest of the workday, Buttery would not acknowledge plaintiff and treated plaintiff coldly. When plaintiff talked with April and Whitney about this, they shivered in disgust and stated that Buttery was

absolutely gross and that he was a "perv." When plaintiff talked about reporting the problem to upper management, April suggested that the women try to ignore it for now. When plaintiff voiced her fears to April and stated that the hostility was getting worse because plaintiff kept rejecting Buttery, April told plaintiff that she knew for a fact that Buttery could not fire plaintiff because plaintiff did such a good job.

(22) Plaintiff was also aware that Buttery had made inappropriate and offensive sexual comments to and concerning other female employees. For example, April, who is married to another woman, told plaintiff that Buttery had made crude comments such as, "you're a carpet muncher" and talked about how April liked "pussy." Buttery also stated that when he was in college, he saw two women having sex in a dorm, and that he could not understand how two women could "get off" on each other. All of this contributed to the hostile work environment.

(23) A couple of days later on December 5, 2014, Buttery told plaintiff that she was on a 30-day review because plaintiff has mislabeled some parts. When Whitney told Buttery that she had most likely mislabeled the parts, Buttery responded that he was certain that it was not her, and that plaintiff was on a probationary period.

(24) The more plaintiff rejected Buttery's advances, the more he retaliated and yelled and screamed at plaintiff. During one such episode, Buttery was so close to plaintiff's face (about three inches) that he spat at plaintiff's face as he screamed at her.

(25) Several days later on December 12, 2014, Buttery told plaintiff that she was fired.

(26) This was not the end of the story, however. On or about February 6, 2015, a woman named Renee from human resources at Fastenal's corporate headquarters called plaintiff and told her that she thought she would let plaintiff know that Buttery had been terminated and that he was caught harassing other employees. The representative also told plaintiff that the company had done an investigation and founded plaintiff's case, but that Fastenal would not permit plaintiff to have her job back.

## COUNT I: CLAIM FOR SEX DISCRIMINATION AND HARASSMENT (AGAINST FASTENAL ONLY)

(27) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(28) At all times material hereto, Fastenal had a duty to maintain a work environment free of sex discrimination and harassment.

(29) Fastenal knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment. To the contrary, Fastenal told plaintiff that although it was aware that Buttery had harassed plaintiff and other women and that Buttery had terminated plaintiff's employment, it nevertheless upheld and approved the termination of plaintiff's employment

(30) Fastenal further violated federal law by failing to take action reasonably calculated to prevent sex discrimination and harassment and by permitting a work environment to exist that was hostile and offensive to plaintiff and other female employees.

(31) As a direct and proximate result of Fastenal's actions, plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(32) At all times material hereto, Fastenal engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of plaintiff so as to support an award of compensatory and punitive damages.

(33) The above-described acts by Fastenal constitute sex harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*

## COUNT II: CLAIM FOR ASSAULT AND BATTERY
## (AGAINST FASTENAL AND BUTTERY)

(34)   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(35)   Defendants inappropriate and unwanted touching and related conduct also constitutes assault and battery in violation of Virginia common law.

(36)   As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer pecuniary loss, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(37)   Further, defendants acted with actual malice toward plaintiff or with reckless disregard of the protected rights of the plaintiff so as to support an award of punitive damages.

WHEREFORE, plaintiff Julia Bennett demands judgment against defendants Fastenal Company and Philip J. Buttery and each of them, jointly and severally, for injunctive and equitable relief, compensatory and punitive damages, together with pre-judgment interest and for costs and attorney's fees to the extent recoverable by law, and for such other and further relief as may be just and equitable.

Trial by jury is demanded.

Respectfully Submitted,

JULIA BENNETT

By   /s/ Terry N. Grimes
          Of Counsel

Terry N. Grimes, Esquire (VSB No. 24127)
Brittany M. Haddox, Esquire (VSB No. 86416)
TERRY N. GRIMES, ESQ., P.C.
Franklin Commons
320 Elm Avenue, SW
Roanoke, Virginia 24016
(540) 982-3711
(540) 345-6572 *Facsimile*
Email: *tgrimes@terryngrimes.com*
Email: *bhaddox@terryngrimes.com*
    *Counsel for Plaintiff*