IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JULIA BENNETT, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:15-cv-00543 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| FASTENAL COMPANY, *et al*, | ) United States District Judge |
| Defendants. | ) |

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff Julia Bennett, who was employed by defendant Fastenal Company for about four months, alleges that she was sexually harassed by defendant Philip J. Buttery, her supervisor, and that he eventually terminated her after she rejected his advances. Her complaint alleges sex discrimination and harassment claims against Fastenal pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and common law claims of assault and battery against Fastenal and Buttery. (Compl., Dkt. No. 1.) Pending before the court is Buttery's motion to dismiss, in which he seeks dismissal of the only count of the complaint in which he is named, Count Two, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Buttery asserts two grounds for dismissal. (Mot. to Dismiss 1, Dkt. No. 6.) First, he contends that he should be dismissed "because there is no subject matter jurisdiction for non-diverse parties in a Virginia Common Law Action" and because Bennett has not pleaded supplemental jurisdiction as a basis for jurisdiction. (*Id.*; *see also* Mem. in Support of Mot. to Dismiss 3, Dkt. No. 7 (explaining same).) He argues that there is an "insufficient common nexus between [p]laintiff's Title VII claim" and the assault and battery claims against him to establish

supplemental jurisdiction, even if it had been pleaded.  (Mot. to Dismiss 1.)  Second, he claims that the Virginia Worker's Compensation Act bars the claims for assault and battery.  (*Id.*)

Bennett has filed a response in opposition (Dkt. No. 9), and Buttery has filed a reply (Dkt. No. 14).  No party has requested a hearing, and the court finds that none is needed.  Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b).  For the reasons set forth below, the court will deny the motion to dismiss.

## I.  BACKGROUND

The facts are based on Bennett's complaint, and the court accepts the well-pleaded, nonconclusory factual allegations in the complaint as true when ruling on a motion to dismiss.  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Bennett was a senior in college when she began an internship with Fastenal in August 2014.  During the course of her internship, Buttery made inappropriate sexual comments about and to Bennett, and also touched her inappropriately.  (Compl. ¶¶ 10–11, 13.)  For example, immediately after Bennett interviewed with Buttery, and throughout her employment, he made comments to other Fastenal employees about her breasts.  (*Id.* at ¶ 14.)  On one occasion when Bennett had to ride in a truck with Buttery, he made repeated comments that made her uncomfortable, including asking questions about her boyfriend, whether she was "really naughty" as a teenager, asking about her love life, and asking about her religious and political beliefs.  (*Id.* at ¶ 15.)  During the drive, he kept staring at her breasts and thighs instead of her face or the road.  (*Id.*)

On another occasion, he asked her about whether she ever had certain body parts waxed.  (*Id.* at ¶ 19.)  He also asked about her relationship with her boyfriend, saying that he thought her

boyfriend was "a creep" and that she was pretty and "could do much better than her boyfriend." (*Id.*)

Buttery also was volatile and physically threatening on occasion. For example, on or about November 3, 2014, he and Bennett were working and talking and he said something like, "So now you are talking back to your boss. If I was my dad I would knock your teeth out and have you picking them up off the floor." Bennett responded with something like, "Oh my God." And Buttery said, "I would knock your teeth out and have you picking them up off the floor for saying the Lord's name in vain." (*Id.* ¶ 16.) On almost a daily basis, if Bennett did not respond to Buttery's comments about her appearance, he would call her "scatterbrained," "dumb," or "hardheaded." (*Id.* ¶ 17.)

Several times a day, Buttery would also grab his crotch and stare at Bennett and other women, which made Bennett "terribly uncomfortable." (*Id.* ¶ 18.) Other female employees referred to him as "jock itch" as a result of this conduct. He also sometimes jiggled his private parts and stared at Bennett. (*Id.*)

Buttery also touched Bennett inappropriately. On one occasion, on or about December 3, 2014, Bennett was heating some food when Buttery approached her from behind and rubbed her back and shoulders. He also pressed his crotch against her buttocks and breathed down her neck. (*Id.* ¶ 21.) After Bennett pulled away quickly and walked out of the office, Buttery ignored her the rest of the day and "treated [her] coldly." (*Id.*)

A couple of days after that incident, Buttery told Bennett that she was on a probationary period because she had mislabeled some parts, although another employee told him that she, and not Bennett, was responsible. Approximately one week later, Buttery fired Bennett. (*Id.* ¶¶ 23–25.)

3

Case 7:15-cv-00543-EKD-RSB   Document 40   Filed 04/22/16   Page 3 of 11   Pageid#: 106

In the period Bennett was on probation, she alleges that "the more [she] rejected Buttery's advances, the more he retaliated and yelled and screamed" at her. (*Id.* at ¶ 24.) On one such occasion, he was yelling within inches of her face and spat on her as he screamed. (*Id.*)

Several months after she was terminated, Bennett received a call from Fastenal's human resources department and was told that Buttery had been terminated after he was caught harassing other employees. The same representative told Bennett the company had "done an investigation and founded [her] case," but that she was not permitted to have her job back. (*Id.* ¶ 26.)

## II. DISCUSSION

### A. Rule 12(b)(1) and 12(b)(6) Standards

The first part of Buttery's motion is brought pursuant to Rule 12(b)(1), which challenges the court's subject matter jurisdiction over Bennett's claim. Bennett bears the burden of establishing that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Buttery asserts a facial challenge to jurisdiction and contends that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). When faced with such a challenge, the court accepts "the facts alleged in the complaint . . . as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

Buttery also asserts that dismissal is warranted under Rule 12(b)(6), on the ground that the assault and battery claims are precluded by the Virginia Workers' Compensation Act (VWCA), Va. Code Ann., § 65.2-101 *et seq.* To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And although a court may not dismiss based on its "disbelief of a complaint's factual allegations," Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (citation omitted).

### B. The Court Has Supplemental Jurisdiction over Bennett's Common Law Claims for Assault and Battery.

Buttery first argues that this court lacks jurisdiction over the claims against him. He notes that the only possible basis for jurisdiction over the common law claims of assault and battery against him is supplemental jurisdiction under 28 U.S.C. § 1367,[1] which Bennett has not referenced in her complaint. He also argues that supplemental jurisdiction does not exist here because the assault and battery claims are not sufficiently related to the Title VII claim, over which this court has original jurisdiction, pursuant to 28 U.S.C. § 1343(a)(4), which is cited in Bennett's complaint. (Compl. ¶ 2.)

To the extent that Buttery is arguing that the claims must be dismissed because the complaint fails to cite to 28 U.S.C. § 1367(a) or otherwise invoke supplemental jurisdiction by name, the court disagrees. The better practice may have been for Bennett to explicitly rely on the supplemental jurisdiction statute. *See* Fed. R. Civ. P. 8 (requiring a "short and plain statement of the grounds for the court's jurisdiction"). But the Fourth Circuit has recognized that

> there is some authority that in the absence of an affirmative pleading of a jurisdictional basis a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly

---

[1] Buttery correctly notes that the court does not have diversity jurisdiction under 28 U.S.C. § 1332, because both he and Bennett reside in Virginia. He also points out that the claims against him are based on Virginia common law, not a federal statute, and thus there is no federal question jurisdiction under 28 U.S.C. § 1331.

pleaded. "The pleading can either refer to the appropriate
jurisdictional statute or contain factual assertions that, if proved,
establish jurisdiction."

*Pinkley, Inc. v. City of Frederick, MD*, 191 F.3d 394, 399 (4th Cir. 1999) (quoting 2 Moore's Federal Practice § 8.03[3] (3d ed. 1997)); *see also Loren Data Corp. v. GXS, Inc.*, No. 10-cv-3474, 2011 WL 3511003, at *12 (D. Md. Aug. 3, 2011) (relying on *Pinkley* to conclude that the plaintiff's "failure to invoke 28 U.S.C. § 1367 does not mandate dismissal of its state law claims"). Thus, the court will look to the facts in the complaint to see if they support the exercise of supplemental jurisdiction here, and will not dismiss the case for lack of jurisdiction simply because supplemental jurisdiction has not been expressly referenced.

As noted, this court has original jurisdiction over Bennett's Title VII claim against Fastenal. The court also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy [including] claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). So the court's first inquiry is whether the claims against Buttery are so related to the claims against Fastenal that they form part of the same case or controversy. If that requirement is satisfied, then the court may decline to exercise supplemental jurisdiction if one or more exceptions apply, *id.* at § 1367(c), but Buttery does not argue in his motion that any exception applies here.[2]

---

[2] In his reply, Buttery seems to be arguing that if the court concludes that supplemental jurisdiction exists, it should nonetheless decline jurisdiction. Although he does not cite to it, he appears to argue that this case could fall within the exception that allows the court to decline supplemental jurisdiction, "in exceptional circumstances, [where] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). (*See* Reply at 2–3, Dkt. No. 14) (arguing that notions of "fairness" and "convenience" should cause this court to decline to exercise supplemental jurisdiction). The court has considered Buttery's arguments, but concludes that this case does not present exceptional circumstances, and that there are no compelling reasons for declining jurisdiction now.

Whether federal law claims and state law claims form part of the same case or controversy "is determined by whether they derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir. 2001) (internal quotation marks and citations omitted). "Most federal courts require only a 'loose factual connection between the claims' to satisfy the requirement that the claims arise from a common nucleus of operative fact." *Nicol v. Imagematrix, Inc.*, 767 F. Supp. 744, 748 (E.D. Va. 1991) (quoting 13B Wright & Miller, *Federal Practice & Procedure*, § 3567.1, at 117 (1984)); *see also White v. Cty. of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993) (explaining that supplemental claims "need only revolve around a central fact pattern").[3]

Here, Bennett's state law claims allege that Buttery assaulted and battered her. Those same allegations form a significant part of her Title VII claim against Fastenal. Thus, the court concludes that the claims are part of the same case or controversy and that, as a result, it has supplemental jurisdiction over the assault and battery claims against Buttery. Other judges of this court have reached the same result, concluding that supplemental jurisdiction existed over state law tort claims in a Title VII case. *See, e.g., Johnson v. Paramont Mfg., LLC*, No. 1:05-cv-79, 2006 WL 2711830, at *4 (W.D. Va. Sept. 21, 2006) (holding that supplemental jurisdiction existed over claims of battery, wrongful discharge, and tortious interference with a contract in Title VII case); *Sewell v. Macado's, Inc.*, No. 7:04-cv-268, 2004 WL 2237074, at *4 (W.D. Va.

---

[3] Buttery cites to *Tobey v. Keiter, Stephens, Hurst, Gray & Shreaves, P.C.*, wherein the court stated—without citing any authority—that to assess whether a common nucleus of operative fact exists, "it is first necessary to determine what Plaintiff will be required to prove under each type of claim." No. 3:13-cv-315, 2013 WL 4101879, at *4 (E.D. Va. Aug. 13, 2013). But it does not follow, as Buttery seems to suggest, that the elements of the claims must be similar in order for supplemental jurisdiction to exist. (*Cf.* Supp. Mem. 4–7.) Indeed, even the *Tobey* court looked to the *facts* that would have to be proved to support each claim. Further, as the cases cited in this opinion demonstrate, a "loose[r]" connection is required, and the court concludes that a sufficient connection exists here. *Nicol*, 767 F. Supp. at 748 (citation omitted).

Oct. 4, 2004) (holding that court had supplemental jurisdiction over assault and battery claims against the plaintiff's employer and former co-worker existed because those claims were "so related to the plaintiff's Title VII claims that they form[ed] part of the same case or controversy"); *Troutt v. Charcoal Steak House, Inc.*, No. 92-cv-869-R, 1993 WL 757520, at *1 (W.D. Va. July 20, 1993) (noting that supplemental jurisdiction existed over assault and battery claims in Title VII case). *Accord, e.g.*, *Lowe v. Unifi, Inc.*, 292 F. Supp. 2d 773, 778 (M.D.N.C. 2003) (battery, intentional and negligent infliction of emotional distress, and wrongful discharge); *Posey v. Calvert Cty. Bd. of Educ.*, 262 F. Supp. 2d 598, 600 (D. Md. 2003) (battery, intentional infliction of emotional distress, and invasion of privacy); *Neal v. Flav-O-Rich, Inc.*, No. 2:95-cv-679, 1996 WL 652759, at *3 (M.D.N.C. July 30, 1996) (negligent and intentional infliction of emotional distress).

      For the foregoing reasons, the court concludes that the claims against Buttery fall within the court's supplemental jurisdiction and that there is no basis for the court to decline jurisdiction under the circumstances of this case. Thus, the court will not dismiss the claims against Buttery for lack of jurisdiction.

**C.**  **Bennett's Assault and Battery Claims Are Not Precluded by the Virginia Workers' Compensation Act.**

      Buttery next contends that the assault and battery claims against him are barred by VWCA, but the court disagrees. Buttery relies, in particular, on the exclusivity provision of the VWCA, § 65.2-307. As explained by another judge of this court,

> The VWCA provides certain rights and remedies to employees who suffer "an injury by accident arising out of and in the course of the employment," which "exclude[ ] all other rights and remedies of such employee . . . at common law or otherwise." *Miller v. Washington Workplace, Inc.*, 298 F. Supp. 2d 364, 371 (E.D. Va. 2004) [quoting § 65.2-307]. The VWCA thus "precludes an employee from bringing common law personal

> injury claims against a co-employee or employer for injuries
> sustained during the course of employment." *Id.* "An injury is
> subject to the exclusivity provisions of the [VWCA] if it is the
> result of an accident and arises out of and in the course of a
> plaintiff's employment." *Richmond Newspapers, Inc. v.
> Hazelwood,* 457 S.E.2d 56, 58 (Va. 1995). Thus, the critical
> inquiry is "whether [plaintiff's] injury was (1) an injury by
> accident, (2) arising out of, (3) and in the course of, her
> employment." *Miller,* 298 F. Supp. 2d at 371.

*Jones v. Kroger Ltd. P'ship I*, 80 F. Supp. 3d 709, 718 (W.D. Va. 2015).

In *Hazelwood*, the Supreme Court of Virginia noted that the second requirement is not satisfied when an assault "is personal to the employee," because in that circumstance, "the injury does not arise out of the employment." 457 S.E.2d at 58. There, the plaintiff had been sexually assaulted several times by a male co-worker, and the court held that the plaintiff's resulting injuries were not covered by the VWCA. *Id.* at 56. The court reasoned that sexual assaults "were of a personal nature and not directed against [the plaintiff] as [an] employee[] or in furtherance of the employer's business." *Id.* Other courts, including this one, have relied on *Hazelwood* in concluding that a sexual assault by a co-worker was personal in nature and not work-related, so that the VWCA did not preclude the plaintiff's claims. *E.g.*, *Hartman v. Retailers & Mfrs. Distrib. Marking Serv., Inc.*, 929 F. Supp. 2d 581, 587 (W.D. Va. 2013); *Kidwell v. Sheetz*, No. 95-cv-83-H, 1996 WL 537860, at *4 (W.D. Va. Sept. 13, 1996); *Butler v. S. States Co-op, Inc.*, 620 S.E.2d 768, 772–73 (Va. 2005).

Further, the VWCA contains a special statutory provision pertaining to sexual assaults, which includes the following:

> B. Notwithstanding the provisions of this title, an employee who
> is sexually assaulted and can identify the attacker may elect to
> pursue an action-at-law against the attacker, even if the attacker is
> the assaulted employee's employer or co-employee, for full
> damages resulting from such assault in lieu of pursuing benefits

9

> under this title, and upon repayment of any benefits received under this title.
>
> C. Nothing in this title shall create a remedy for sexual harassment nor shall this title bar any action at law, that might otherwise exist, by an employee who is sexually harassed.

Va. Code Ann. § 65.2-301. This provision further supports the court's conclusion: that the VWCA does not bar the assault and battery claims against Buttery here. *See Troutt v. Charcoal Steak House, Inc.*, No. 92-cv-869, 1993 WL 757520, at *2 (W.D. Va. July 20, 1993) (relying on language from § 65.2-301.B in concluding that a claim against supervisor who allegedly sexually assaulted plaintiff was not barred by the VWCA).

Buttery argues that *sexual* assault and battery are the only types of assault and battery that would fall outside the VWCA's bar, and then asserts that most of the specific incidents described in the complaint are not sexual in nature and thus not "sexual" assault or battery, as those terms are defined in the criminal code provisions. (Reply 3–4.) But he presents no authority for the premise of this argument—that only assault and battery pleaded as a "sexual assault and battery" fall outside the scope of the VWCA bar. And, as discussed above, there is ample authority to the contrary. The entirety of the complaint is clear that Bennett is alleging assault and battery in the context of Buttery's sexual harassment of her. Moreover, at least some of the alleged actions forming the basis of the assault and battery claims were of a sexual nature. As explained in *Hazelwood* and the cases relying on it, the actions of Buttery here are "personal in nature" and do not "arise out of" Bennett's employment. Thus, the VWCA does not bar the claims.

## III. CONCLUSION

For the foregoing reasons, the court will deny Buttery's motion to dismiss in its entirety.

An appropriate order will be entered.

Entered: April 22, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge